Judge BucKNEkj
delivered the opinion of the court.
Dabney Turner, died on Monday^ about 10 'clock A. M. On the Sunday preceding, his last will and testament was made and published between 12 and 1 o’clock, P. Ms The testator’s competency to make the will, is the only question for consideration. On Sunday morning, the testator’s attending ‘.physicians were consulted on the subject of his ability and mental capacity to make a will, arid they gave it as ■their opinion, that he was incompetent. On Sunday • evening, abofit 3 or 4 o’clock, Doctor Rogers again “visited Turner, and was of opinion that he was not *537 «competent then mofe than he had been in the morning to make a will. It is clear from the testimony of the physicians, that their patient on Sunday rvas in such a situation, as to leave no doubt on their minds, that his death would peedily lake place. The event verified the correctness of the opinions entertained by them on Sunday, in regard to his dissolution. Turners physicians left him on Sunday morning, obout 11 o’clock. It was 3 or 4 o’clock in the evening, as already stated, when one of them returned. His disease was a bilious fever, with which he had been afflicted twelve or fourteen days before his death.
The particular acts or words of Tumor, upon which 'the opinions of his physicians were b ised, have not been detailed. It is said, that he was occasionally flighty and deranged in mind, and that he grew worse ’in body and mind from Friday rmtil Sunday evening, when Dr. Rogers saw him for the last time. Doctor Rogers however says, that there was no time when he was with him, that he did not know his acquaintances who spoke to him. The leading facts in support of Turner’s competency to make the will, are; he directed the draftsman how he wished his property disposed of, in a clear and intelligible manner; when the subject of making a will was introduced, Turner expressed an opinion, that he - had postponed it until it was too late, thereby showing that he was sensible of his situation, and knew that he would soon die. When told that it was not too late and that he might yet make a will, he gave directions as to the disposition of his property. While the draftsman was preparing the will in an adjoining room, Turner caused him to be called in with a view to have an alteration made in the disposition of his property previously ordered, but before the draftsman came, he determined to make no alteration, and said he would not separate his little negroes. He communicated to his wife the contents of the will with clearness, in the presence of one Of the subscribing witnesses. He caused his servants to be collected around his bed side, and admonished them on the subject of their duties, and the necessity of preparing for another state of existence. These transactions took place after the departure of his physicians on Sunday morning, and before the return of Doctor Rogers in the evening. If the statements of *538 Mr. Bush, the draftsman of the will, and M. Davidson^ a subscribing witness be true there Can be' no doubt of Turners sanity, and that he was collected and self possessed, having the use of the faculties of his mind in such a degree, as to render him capable of making a valid will and testament. That their statements are true, we cannot doubt. The intelligence manifested by them in delivering their testimony, proves that they could not have misapprehended or been deceived by what transpired before them. There is no ground to impute any impropriety of conduct to them. If, therefore, Turner was incompetent to make a will at the times when his physicians speak of his situation, we are bound with a view to reconcile and give full effect to all the testimony, to believe that he was competent when the will was executed.
Monroe, Wickhffe and Woolley, for the will; Crittenden against it.
There were other matters given in evidence, which we deem it useless to notice. As Turner had no children, it may readily be conceived, that the friends of his wife felt some anxiety that she should be provided for, but it does not appear to us, that any thing vicious resulted from their anxieties, ox that Turner was operated on by any of them in his last illness, in such manner as to procure the will through fraud or imposition upon his weakness.
The order of the Barren county court is affirmed with costs.